1

2

3                                                        O

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10  DAVID THEIMER, SR., an    )
    individual, et al.        )
11                            )   Case No. EDCV 08-293-VAP
                   Plaintiff, )   (JCRx)
12                            )
    v.                        )   **[Motions filed on January 20**
13                            )   **and January 30, 2009 ]**
    E. ORDUNO, an             )
14  individual, GARY PENROD,  )   **ORDER GRANTING IN PART AND**
    an individual, in his     )   **DENYING IN PART MOTION TO**
15  capacity as Sheriff for   )   **STRIKE; DENYING SUMMARY**
    the County of San         )   **JUDGMENT AS TO DEFENDANT**
16  Bernardino, THE COUNTY    )   **MACHORRO; GRANTING SUMMARY**
    OF SAN BERNARDINO, a      )   **JUDGMENT AS TO DEFENDANT**
17  governmental entity,      )   **JENKS; GRANTING SUMMARY**
    ROSEMARY MACHORRO, an     )   **JUDGMENT AS TO DEFENDANT**
18  individual, MICHAEL       )   **CITY OF VICTORVILLE; DENYING**
    JENKS, an individual,     )   **MOTION FOR ADJUDICATION OF**
19  THE CITY OF VICTORVILLE,  )   **FACTS AS MOOT**
    a governmental entity,    )
20  and DOES 1 through 10,    )
    inclusive,                )
21                            )
                   Defendants.)
22  _____)

23

24      On February 23, 2009, several motions filed by

25  defendants Rosemary Machorro ("Machorro"), Michael Jenks

26  ("Jenks"), and the City of Victorville came before the

27  Court for a hearing.  After reviewing and considering all

28  papers filed in support of, and in opposition to, the

1  Motions, as well as the arguments advanced by counsel at
2  the hearings, the Court GRANTS IN PART and DENIES IN PART
3  the Motion to Strike; DENIES Summary Judgment as to
4  Machorro; GRANTS Summary Judgment in favor of Defendant
5  Jenks; GRANTS Summary Judgment in favor of Defendant City
6  of Victorville; and DENIES the Motion for Adjudication of
7  Facts as Moot.

8

9                        **I.   BACKGROUND**
10 **A.   Procedural History**
11     **1.   First Amended Complaint**
12     The Court granted Machorro, Jenks, and the City of
13 Victorville's (collectively "Moving Defendants") motion
14 to dismiss plaintiff David Theimer, Sr.'s ("Plaintiff"[1]
15 First Amended Complaint ("FAC") in an Order dated
16 December 17, 2008 ("December 2008 Order").  The Court
17 granted Plaintiff leave to amend on some claims.

18

19     **2.   Second Amended Complaint**
20     Plaintiff timely filed a Second Amended Complaint
21 ("SAC") naming "E." Orduno, Gary Penrod, the County of
22 San Bernardino, Machorro, Jenks, and the City of
23 Victorville as Defendants.

24  _____

25     [1]Only David Theimer, Sr. is a proper plaintiff.  This
   Court's December 2008 Order granted the motion to dismiss
26 the FAC without leave to amend as to all plaintiffs other
   than David Theimer, Sr. as they had not pled any
27 constitutional violation.  Accordingly, the Court
   dismisses the claims of all persons but David Theimer,
28 Sr. and examines only his claims here.

1

2        Plaintiff asserts all defendants, including those who

3   do not move for summary judgment, acted together to

4   conduct the March 2, 2007 warrantless search of kennels

5   near Plaintiff's house and seizure of his 44 dogs.  He

6   also claims all defendants acted together to arrest and

7   incarcerate him and to disclose the giardia infection of

8   his dogs to a newspaper reporter.  According to

9   Plaintiff, these acts violated his rights under the

10  Fourth Amendment and the "penumbral right to privacy" of

11  the U.S. Constitution.  (SAC ¶¶ 11-17.)  Plaintiff

12  includes no other constitutional claims in his SAC.

13

14       **3.   Motion to Strike, Motions for Summary Judgment,**

15            **Motion for Adjudication of Facts**

16       The Moving Defendants, separately or together, bring

17  the four motions now before the Court:

18

19       ● Motion for Summary Judgment as to Defendants

20       Machorro and Jenks ("Machorro & Jenks Mot.");

21

22       ● Motion for Summary Judgment as to the City of

23       Victorville ("Victorville Mot.");

24

25       ● Motion for an Order Specifying Facts Not Genuinely

26       at Issue ("Mot. for Facts" or "Motion for

27

28

1    Adjudication of Facts"), brought by Machorro, Jenks,

2    and the City of Victorville; and

3

4    ● Motion to Strike Portions of the SAC ("Mot. to

5    Strike"), brought by Machorro, Jenks, and the City of

6    Victorville.

7

8    The Moving Defendants filed the Motion to Strike on

9    January 20, 2009 and the other Motions on January 30,

10   2009, all noticed for hearing on February 23, 2009.

11   Plaintiff filed Opposition to all Motions on February 9,

12   2009.  On February 13, 2009 Moving Defendants timely

13   filed Replies in support of all Motions.  On February 14,

14   2009, Plaintiffs filed three untimely Statements of

15   Genuine Issues in opposition to the two Motions for

16   Summary Judgment and the Motion for Adjudication of

17   Facts.  On February 17, 2009, Moving Defendants filed

18   objections to Plaintiff's untimely documents.  Pursuant

19   to Local Rules 56-1 through 56-4 and 7-10, the Court

20   disregards Plaintiff's untimely filings.

21

22              **II. MOTIONS FOR SUMMARY JUDGMENT**

23   **A.   Facts**

24   Moving Defendants offer nearly identical materials in

25   support of, and Plaintiff offers very similar argument in

26   opposition to, the Motion for Summary Judgment as to

27

28

                              4

1   Machorro and Jenks and the Motion for Summary Judgment as

2   to the City of Victorville.[2]

3

4       Moving Defendants, pursuant to Local Rule 56-1,

5   support each of their Motions for Summary Judgment with

6   Statements of Undisputed Fact ("DSUF").  Plaintiff, in

7   contravention of Local Rule 56-2, failed timely to "serve

8   and file with the opposing papers a separate document

9   containing a concise 'Statement of Genuine Issues'

10  setting forth all material facts as to which it is

11  contended there exists a genuine issue necessary to be

12  litigated."

13

14      The consequence of Plaintiff's failure is that the

15  Court, in accordance with Local Rule 56-3, "will assume

16  that the material facts as claimed and adequately

17  supported by the moving party are admitted to exist

18  without controversy . . . ."  In other words, the Court

19  will grant summary judgment if Moving Defendants proffer

20  evidence demonstrating they are entitled to judgment as a

21  matter of law.  Following the Local Rules does not

22

23  _____

24      [2]Jenks' Declaration is offered only in support of the
    Motion for Summary Judgment in favor of Machorro and
25  Jenks.  Moving Defendants provide two different
    declarations from Cathcart in support of each Motion for
26  Summary Judgment.

27      Moving Defendants provide additional material in
    support of the Motion for Adjudication of Facts,
28  including a third Cathcart declaration, which the Court
    addresses separately below.

amount, as Plaintiff contends, to granting summary judgment by default.  <u>See</u> <u>In re Rogstad</u>, 126 F.3d 1224, 1227 (9th Cir. 1997).

**1.  Parties**

**a.  Plaintiff**

On March 2, 2007, Plaintiff conducted an unlicensed dog breeding enterprise at 15119 El Cariso Road, a residential address, in the City of Victorville, California.  (Machorro & Jenks DSUF ¶ 1; Victorville Mot. DSUF ¶ 1.)

**b.  Moving Defendants**

**I.  Machorro**

On March 2, 2007 Machorro was an Animal Care and Control officer for the City of Victorville. (Declaration of Rosemary Machorro ¶ 3 in support of both Machorro & Jenks Mot. and Victorville Mot. ("Machorro Decl.").)

**ii. Jenks**

On March 2, 2007, Jenks was the Interim Assistant Director of the Department of Public Works.  (Jenks Decl. ¶ 3.)  He was not employed in Animal Care and Control and did not supervise employees in that division.

**iii.  City of Victorville**

1   The City of Victorville employed Machorro and Jenks.
2   (Machorro Decl. ¶ 3; Jenks Decl. ¶ 3.)  According to
3   Michael Cathcart ("Cathcart"), the supervisor of Animal
4   Care and Control Division of the City of Victorville, the
5   policy of City of Victorville is to follow the U.S.
6   constitution.[3]  (Declaration of Michael Cathcart ¶ 3 in
7   support of Victorville Mot. ("Cathcart Decl. to
8   Victorville Mot.")[4].)

9

10      **2.  Events**

11          **a.  Machorro speaks with Plaintiff**

12   According to Machorro, on March 2, 2007, she went to
13   Plaintiff's residence in response to a call from her
14   dispatcher, who told her a member of the public had
15   complained to an unnamed person that Plaintiff sold him a
16   puppy infected with giardia.  (Machorro Decl. ¶ 4.)  The
17   dispatcher also told Machorro there were no dog licenses
18   on file listing Plaintiff's residence.  (Machorro Decl. ¶
19   4.)

20   Machorro went to the door of Plaintiff's house and
21   spoke with Plaintiff, who denied he had sold an infected
22   dog and refused Machorro entry to where he kept his dogs.
23   Plaintiff admitted he had at least two dogs.  (Machorro
24   Decl. ¶¶ 5, 7.)  Plaintiff showed Machorro an adult dog

25

26      ───────────────

27          [3]Cathcart is not named as a defendant.

        [4]This is one of three different Cathcart
28   declarations.

1  and a puppy; Machorro also heard or saw two more dogs.
2  (Machorro Decl. ¶ 7.)   A fence blocked her view of
3  Plaintiff's property.   (Deposition of Rosemary Machorro
4  ("Machorro Dep.") 22 at Ex. 234 to Reply to Victorville
5  Mot.)   Accordingly, Machorro knew Plaintiff had, at the
6  most, four dogs after speaking with Plaintiff.   When she
7  left Plaintiff's residence she had "no reason to suspect
8  that there was an extensive kennel or dozens of dogs on
9  the premises."   (Machorro Decl. ¶ 7.)

10

11            **b.   Machorro requests assistance**

12      Machorro then contacted the San Bernardino County
13  Sheriff's Office for assistance and a deputy responded,
14  entered Plaintiff's property, spoke with him, arrested
15  him, handcuffed him, and took him off of his property.
16  (Machorro Decl. ¶ 4; Machorro Dep. 29-30.)   The record
17  before the Court does not disclose exactly what Machorro
18  said to the deputy, nor what information, if any, the
19  deputy relayed back to Machorro after arresting
20  Plaintiff.

21

22      Once the deputies had entered Plaintiff's property,
23  Machorro went into the backyard and discovered dogs
24  without food or water, some suffering from mange, in an
25  area with a strong smell of feces and urine.   (Machorro
26  Decl. ¶ 10; Machorro Dep. 30.)   Machorro knew giardia is
27  found in animal feces, that it can be passed to humans,
28

1  and believed the conditions on Plaintiff's property
2  represented "a significant health risk[] to both animals
3  and humans."  (Machorro Decl. ¶¶  6, 11.)

5       Machorro called a dispatcher named "Laurie."
6  (Machorro Dep. 33.)   Forty-four dogs were then
7  photographed, catalogued, and impounded.  (See Machorro
8  Decl. ¶ 12.)

10           **c.   Jenks arrives and helps catalog dogs**
11       Jenks was employed by the City of Victorville; he
12  received a call from Lori McRoberts, ("McRoberts") whose
13  position is not revealed in the moving papers but who
14  appears to have been the dispatcher Machorro contacted.
15  (Jenks Decl. ¶ 4.)  McRoberts asked Jenks to go to
16  Plaintiff's residence and help "rescue" animals.  (Jenks
17  Decl. ¶ 4.)  When Jenks arrived, he found the sheriff's
18  deputies were in charge.  (Jenks Decl. ¶ 7.)  Jenks made
19  no decision about entering, searching, or seizing the
20  dogs.  (Jenks Decl. ¶ 7.)  Jenks only helped photograph
21  and record data about approximately ten dogs.  (Jenks
22  Decl. ¶ 5-6.)

24           **d.   Post-seizure interactions between Moving
25                  Defendants and Plaintiff**
26       On an unspecified date on or after March 2, 2007,
27  Machorro served Deborah Theimer, Plaintiff's wife, a

9

notice of a dog owner's right to request a post-seizure
hearing pursuant to California Penal Code § 597.1(f).
(Machorro Decl. ¶ 13.)

    A few days later, Machorro returned to Plaintiff's
residence with Cathcart, supervisor of the Victorville
Animal Care and Control Division, to discuss the
disposition of the seized dogs.  (Machorro Decl. ¶ 16.)
According to Machorro, Plaintiff wanted the dogs killed;
according to Cathcart, Plaintiff wanted them killed if
Plaintiff could not have them back.  (Machorro Decl. ¶
16; Cathcart Decl. to Machorro & Jenks Mot. ¶ 4.)  The
City of Victorville arranged for the adoption of all but
a few dogs.  The unadopted dogs were killed.  (Cathcart
Decl. to Machorro & Jenks Mot. ¶¶ 4-7.)

### e. Statements to reporters

    Machorro and Jenks both deny they told a newspaper
reporter Plaintiff "was a carrier of a loathsome
disease."  (Machorro Decl. ¶ 17; Jenks Decl. ¶ 12.)

### f. Policies of the City of Victorville

    According to Cathcart, supervisor of the Victorville
Animal Care and Control Division, "[t]here does not exist
within the Animal Care and Control division, or within
the City of Victorville, any informal custom, habit, or
practice of unreasonably searching or seizing the

1  property of anyone."   (Cathcart Decl. ¶ 7 to Victorville

2  Mot.)

3

4  **B. Legal Standard**

5      A motion for summary judgment shall be granted when

6  there is no genuine issue as to any material fact and the

7  moving party is entitled to judgment as a matter of law.

8  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>,

9  477 U.S. 242, 247-48 (1986).   The moving party must show

10 that "under the governing law, there can be but one

11 reasonable conclusion as to the verdict."   <u>Anderson</u>, 477

12 U.S. at 250.

13

14     Generally, the burden is on the moving party to

15 demonstrate that it is entitled to summary judgment.

16 <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);

17 <u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707

18 F.2d 1030, 1033 (9th Cir. 1983).   The moving party bears

19 the initial burden of identifying the elements of the

20 claim or defense and evidence that it believes

21 demonstrates the absence of an issue of material fact.

22 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

23

24     Where the non-moving party has the burden at trial;

25 however, the moving party need not produce evidence

26 negating or disproving every essential element of the

27 non-moving party's case.   <u>Celotex</u>, 477 U.S. at 325.

28

1  Instead, the moving party's burden is met by pointing out
2  that there is an absence of evidence supporting the non-
3  moving party's case.  Id.

4

5      The burden then shifts to the non-moving party to
6  show that there is a genuine issue of material fact that
7  must be resolved at trial.  Fed. R. Civ. P. 56(e);
8  Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The
9  non-moving party must make an affirmative showing on all
10  matters placed in issue by the motion as to which it has
11  the burden of proof at trial.  Celotex, 477 U.S. at 322;
12  Anderson, 477 U.S. at 252.  See also William W.
13  Schwarzer, A. Wallace Tashima & James M. Wagstaffe,
14  Federal Civil Procedure Before Trial § 14:144.

15

16      A genuine issue of material fact will exist "if the
17  evidence is such that a reasonable jury could return a
18  verdict for the non-moving party."  Anderson, 477 U.S. at
19  248.  In ruling on a motion for summary judgment, the
20  Court construes the evidence in the light most favorable
21  to the non-moving party.  Barlow v. Ground, 943 F.2d
22  1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v.
23  Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31
24  (9th Cir. 1987).

25

26

27

28

**C. Discussion**

Defendants Machorro and Jenks move for summary judgment asserting (1) their acts did not violate Plaintiff's rights or, in the alternative, (2) they are entitled to qualified immunity. (Machorro & Jenks Mot. 3, 7.) The Court examines their liability separately.

**1.   Summary Judgment as to Machorro**

**a.   Liability for violation of the Fourth Amendment**

Machorro claims she is entitled to summary judgment because her warrantless search was permissible under the Fourth Amendment, as she was responding to exigent circumstances, i.e., 44 dogs kept at an unlicensed facility in the conditions described. (Machorro & Jenks Mot. 8-9.) Machorro is mistaken. In determining whether Machorro acted under exigent circumstances, the Court only examines those facts she knew before she followed law enforcement officers into Plaintiff's property. According to Machorro's deposition testimony, she could not see into Plaintiff's backyard because of a fence. (Machorro Dep. 22.) At the time she called the sheriff's deputy, she "had no reason to suspect that there was an extensive kennel or dozens of dogs on the premises." (See Machorro Decl. ¶¶ 5-7.) "[O]nly once she was able to see into the backyard did she realize" the number of dogs Plaintiff possessed and the "unhealthful, unsanitary

conditions in which the dogs were kept."  (Reply to
Machorro & Jenks Mot. 8.)

     Machorro relies in vain on Broden v. Marin Human
Society, 70 Cal. App. 4th 1212 (1999).  There, the
California Court of Appeal described the kind of
information an animal care and control officer would need
to determine that "immediate seizure" of an animal was
appropriate without a warrant pursuant to California
Penal Code section 597.1.  These circumstances are "the
equivalent of the exigent circumstances exception
familiar to search and seizure law . . . every case must
be explained in light of what was known to the officer at
the time of entry."  Broden, 70 Cal. App. 4th at 1220.

     Machorro has not testified or claimed that, at the
time she entered Plaintiff's property, she had observed
any evidence of animal distress, much less the sort of
evidence observed by the government agent in Broden.  In
Broden, responding to a complaint from the public, the
agent went to a shop selling reptiles, smelled a terrible
odor, saw flies inside, observed flies trying to enter
the shop, and found that the owner of the business did
not respond to repeated attempts to contact him.  (Opp'n
to Machorro & Jenks 10 citing Broden, 70 Cal. App. 4th at
1222.)  The Broden court found that, short of a "show of
visible slaughter or blood oozing under the door, a more

1    compelling case for immediate entry cannot be imagined."

2    Here, in contrast, Machorro proffers evidence only that

3    she knew there was a complaint about a sick puppy and

4    that Plaintiff possessed up to four dogs; she had "no

5    reason to suspect that there [were] . . . dozens of dogs

6    on the premises."  (Machorro Decl. ¶ 7.)

7

8        Based on the evidence adduced by Machorro, she has

9    not met her initial burden on summary judgment of showing

10   there is no dispute of material fact whether she complied

11   with the Fourth Amendment.

12

13          **b.   Qualified immunity**

14       Government officials are entitled to qualified

15   immunity from civil damage claims unless their conduct

16   violates "clearly established constitutional rights of

17   which a reasonable person would have known."  <u>Harlow v.</u>

18   <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).

19

20          **I.   Clearly established right**

21       At the time of the search, controlling authority

22   recognized: (1) a clearly established right to be free of

23   unreasonable seizures in one's home and its surrounding

24   structures; (2) a clearly-established right not to have

25   dogs unnecessarily destroyed in the execution of a search

26   warrant.  <u>U.S. v. Jacobsen</u>, 466 U.S. 109, 113 (1984)

27   (discussing basic Fourth Amendment principles); <u>Ortega v.</u>

28

O'Connor, 146 F. 3d 1149, 1157 (9th Cir. 1998)
(discussing extension of Fourth Amendment principles to
areas outside the home, such as an office); San Jose
Charter of Hells Angels v. San Jose, 402 F.3d 962, 977
(9th Cir. 2005) ("the Fourth Amendment prohibits the
killing of a person's dog, or the destruction of a
person's property, when that destruction is unnecessary –
i.e., when less intrusive, less destructive alternatives
exist" for conducting a search).  Accordingly, the Court
finds Plaintiff had a clearly-established right to be
free of unreasonable searches of his property, including
his fenced back yard.

Plaintiff claims Machorro violated that right; the
Court finds, above, that Machorro has not borne the
burden of adducing evidence she complied with the Fourth
Amendment.  Accordingly, for the purposes of determining
whether Machorro is entitled to qualified immunity, the
Court assumes, without deciding, that Machorro violated
the Fourth Amendment.

### ii. Reasonable officer

The Court must now determine whether a reasonable
officer "could have believed that, in those exigent
circumstances, immediate action was necessary to rescue
the dogs and to provide them with the attention and
veterinary care they required."  (Machorro & Jenks Mot.

10.)  The Court cannot find a reasonable officer would believe she confronted exigent circumstances.  Machorro proffers proof only that she knew, before she called the sheriff, that Plaintiff had four dogs, none of them visibly ill, and that one person had complained Plaintiff sold him a sick puppy.  A reasonable officer would not conclude in those circumstances "immediate action was necessary to rescue" the four dogs.  <u>See Pearson v. Callahan</u>, ___ U.S.___, 129 S. Ct. 808, 814 (2009). (Of course, a reasonable officer *with* knowledge 44 dogs were on the property without food or water, surrounded by their own feces and urine, might have come to a different conclusion, but that is not the question the Court is called upon to resolve here.)

In her Reply, Machorro argues she had probable cause to search Plaintiff's backyard without a warrant because she had probable cause to arrest Plaintiff for the misdemeanor of having more than three dogs at his residence.[5]  Had Machorro arrested Plaintiff, she argues, she could have performed a search pursuant to arrest.

Machorro's argument is unconvincing.  She testified at her deposition that when she initially spoke with Plaintiff, a fence blocked her view from the location

---

[5]The parties agree this is a misdemeanor.  (Reply to Machorro & Jenks Mot. Ex. 233 at 4 (item 10).)

where he kept the dogs.  (Machorro Dep. 21.)  She does
not adduce evidence the dogs were within the scope of the
search she could have conducted pursuant to a lawful
arrest.

     The Court DENIES the Motion as to Machorro.


     **2.   Summary Judgment as to Jenks**

     Jenks claims his role in the acts Plaintiff complains
of was so minor that he did not violate Plaintiff's
rights.  (Machorro & Jenks Mot. 7.)  Jenks was not an
employee of the Animal Care and Control division, only
assisted other City of Victorville employees catalog
dogs, and proffered evidence he did not tell a newspaper
reporter Plaintiff had a "loathsome disease."  (Machorro
& Jenks Mot. DSUF ¶¶ 7-8, 10.)

     Plaintiff concedes "JENKS played little or no role in
the violation of the plaintiffs' civil rights."  (Opp'n
to Machorro & Jenks Mot. 5:1-3.)

     Jenks fails to address whether entering Plaintiff's
property, after the police conducted a search not found
to have complied with the Fourth Amendment, and after
animal control officers sent for help, was a violation of
the Fourth Amendment.  Nevertheless, an officer is

entitled to qualified immunity where he makes a
reasonable mistake of fact or law.  <u>Pearson</u>, ___ U.S. at
___, 129 S. Ct. at 814 (qualified immunity provides
protection where officers make reasonable mistake of law,
mistake of fact, or a mixture of the two).  In light of
Jenks' evidence he merely assisted other employees
document of seized dogs and Plaintiff's admission Jenks
played "little or no role in the violation of
[P]laintiff[']s[] civil rights" the Court finds Jenks is
entitled to qualified immunity.  (Opp'n to Machorro &
Jenks Mot. 5:1-2.)  Even if he violated Plaintiff's civil
rights, he did so based on a reasonable mistake.
<u>Pearson</u>, ___ U.S. at ___, 129 S. Ct. at 814.  The Court
GRANTS the Motion for Summary Judgment as to Jenks.

**3.   Motion for Summary Judgment as to City of
Victorville**

The City of Victorville claims (1) its officers did
not violate Plaintiff's rights (Victorville Mot. 8); and
(2) it has no policy that violates Plaintiff's rights.
As the Court denies Machorro summary judgment, the City
of Victorville cannot escape liability through the first
theory.  As to the second theory, however, the City of
Victorville has borne its burden by proffering evidence
from Cathcart that it has no policy violating the U.S.
Constitution.  (Cathcart Decl. to Victorville Mot. ¶ 7.)
Plaintiff, through his failure to file timely a Statement

1  of Genuine Issues, forfeited his opportunity to contest

2  this material fact.  The Court GRANTS the Motion for

3  Summary Judgment as to the City of Victorville.

4

5              **III.  MOTION FOR ADJUDICATION OF FACTS**

6       The Moving Defendants ask the Court, pursuant to Rule

7  56(d)(1) of the Federal Rules of Civil Procedure, for an

8  order specifying the following facts are not genuinely at

9  issue: (1) Plaintiff relinquished his interest in the

10  seized dogs, which he claims are worth over $150,000; (2)

11  Plaintiff cannot claim lost profits.[6]

12

13       Plaintiff's claim for the lost value of the dogs, and

14  for any business proceeds resulting therefrom, does not

15  result properly from a violation of the Fourth Amendment

16  because the alleged losses resulted not from the search

17  but from the post-seizure proceedings, which occurred

18  some days later.  See Hells Angels, 402 F.3d at 977-78

19

20  _____

21       [6]According to Local Rule 56-4, parties moving for, or
    opposing, such an order shall submit a proposed Statement
22  of Uncontroverted Facts, like that submitted to support a
    motion for summary judgment, but "limited to the facts
23  which the moving party asserts to be without substantial
    controversy."  As with the two motions for summary
24  judgment, Plaintiff failed timely to submit a Statement
    of Genuine Issues in opposition to the Motion for
25  Adjudication of Facts.

26       Accordingly, pursuant to Local Rules 56-1 through 56-
    3, the Court "will assume that the material facts as
27  claimed and adequately supported" by Moving Defendants
    "are admitted to exist without controversy."  Local R.
28  56-3.

1   (law enforcement officers violated Fourth Amendment when

2   they unnecessarily shot and killed dogs during raid).[7]

3   The Court does not determine whether the relinquishment

4   of the dogs was valid, or whether Plaintiff acted under

5   duress, because these facts are immaterial to Plaintiff's

6   Fourth Amendment claim.

7

8       In other words, the Motion for Adjudication of Facts

9   is moot because Plaintiff did not properly plead any

10  claim which would entitle him to recover the value of the

11  seized dogs or his lost profits.  Plaintiff included no

12  Fifth or Fourteenth Amendment claims in his SAC although

13  he was forewarned of the distinction between these claims

14  and those arising under the Fourth Amendment.

15  Plaintiff's FAC sought relief under the Fourth, Fifth,

16  and Fourteenth Amendments.  In its December 2008 Order,

17  the Court discussed these claims under separate headings,

18  explained the conditions predicate to bringing a Fifth

19  Amendment claim, and dismissed these claims with leave to

20  amend.  (December 2008 Order at 5-6.)  The only

21  constitutional claims in Plaintiff's SAC are those

22  arising under the Fourth Amendment and the constitutional

23  right to privacy, the latter of which is a Fourteenth

24

25

26      [7]Broden provides no guidance on this point, as the

27  California Court of Appeal found the animal control
    authorities acted properly in entering the reptile shop

28  and seizing the animals.  70 Cal. App. 4th at 1223.

Amendment claim, but not one germane to allegations of
due process violations.

The Court DENIES the Motion for Adjudication of Facts
as moot; Plaintiff is not entitled to recover lost
profits or the value of his dogs because he did not bring
an appropriate claim under the Fifth or the Fourteenth
Amendments.

### IV. MOTION TO STRIKE

All Moving Defendants ask the Court to strike several
portions of the SAC.  After considering the arguments
offered by counsel at the hearing, the Court concludes
counsel complied with Local Rule 7-3.  Accordingly, the
Court GRANTS IN PART and DENIES IN PART the Motion to
Strike.

**A.   Loathsome Disease Allegations**

Plaintiff's SAC, at page 5, lines 15 to 18, and page
6, lines 12 to 14, states that Machorro and Jenks told a
newspaper reporter "Plaintiffs were carriers of a
loathsome, contagious disease."  Among the Court's
factual findings regarding the Motion for Summary
Judgment brought by Machorro and Jenks, above, is that
neither Machorro nor Jenks made such statements.
Accordingly, the Court strikes those allegations from the
SAC.  The Motion to Strike is GRANTED IN PART.

**B.   "Acting in Concert" Allegations**

Plaintiff alleges at page 6 of his SAC, at lines 9 to 12, that Machorro and Jenks acted in concert with a sheriff's deputy to conduct an unauthorized search and seizure.  Moving Defendants ask the Court to strike these allegations as baseless as Plaintiff has not conducted new discovery since December 15, 2008, when his counsel stated in open court that Plaintiff had no factual basis for asserting Moving Defendants acted in concert with a sheriff's deputy.  (Mot. to Strike 4-5.)  Consequently, they assert, Plaintiff can have no basis for these allegations.

According to Plaintiff's counsel, however, he "acquired information" since December 15, 2008 that Machorro called the sheriff's deputy.  (Declaration of Michael DesJardins ("DesJardins Decl.") ¶ 2 attached to Opp'n to Mot. to Strike.)  Accordingly, the Court cannot conclude these allegations lack foundation and DENIES the Motion to Strike these allegationd.

**C.   Allegations Regarding Practices and Procedures of the City of Victorville**

The Court GRANTS IN PART the Motion to Strike as to the language at page 6, lines 16 to 20, of the SAC in which Plaintiff claims the City of Victorville injured him pursuant to official practice and procedures.  As the

1   Court finds, above, that the City of Victorville is
2   entitled to summary judgment, Plaintiff is not entitled
3   to relief on this claim.  The Court strikes it from the
4   SAC.

5

6   **D.   Punitive Damages**

7        The Court DENIES the Motion to Strike as to
8   Plaintiff's allegations he is entitled to punitive
9   damages against Machorro and Jenks.  (SAC 7:11-12.)
10  Although Jenks has shown he is entitled to summary
11  judgment, as discussed above, the evidence adduced by
12  Machorro does not foreclose, as a matter of law, the
13  possibility of punitive damages.

14

15                     **IV. CONCLUSION**

16       For the reasons above, the Court DENIES the Motion
17  for Summary Judgment as to Machorro; GRANTS the Motion
18  for Summary Judgment as to Jenks; GRANTS the Motion for
19  Summary Judgment as the City of Victorville; DENIES the
20  Motion for Adjudication of Facts; and GRANTS IN PART and
21  DENIES IN PART the Motion to Strike.

22

23

24

25

26  Dated: February 25, 2009

27                         VIRGINIA A. PHILLIPS
                         United States District Judge

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28